*119 OPINION.
TURNER:
The petitioner contends that he is entitled to the deductions of $11,554.09 and $657.50 in 1936 and 1937, respectively, either as bad debts or as losses. Respondent contends that the amounts are not allowable deductions either as bad debts or as losses.
In the early part of 1933 the petitioner was liable as endorser on 11 notes of Airways, totaling $26,278.51, which were held by the bank. The bank also held certain collateral of the petitioner as security for the payment of the notes. Within a few weeks after he took charge of the bank’s affairs and when several of the notes had become due and the remainder would be due within a few weeks, McCulloch, after ascertaining that Airways was insolvent and unable to make payment and that the petitioner was solvent and able to make payment, conferred with the petitioner respecting the petitioner’s making payment of said notes. In order to avoid having to make present payment of his liability as endorser on the notes and in order to reduce if possible the amount he would eventually have to pay on them, the petitioner entered into an agreement with McCulloch whereby an extension of the time of payment was granted for four years, the city leasing Airways’ airport for a four-year period at sufficient annual rental to liquidate the notes, with interest, during that period and the petitioner agreeing with McCulloch to guarantee that the lease would be kept in full force and effect throughout the four-year period and that Airways would not default in the performance of its covenants thereunder. McCulloch knew and the petitioner knew that, since the rentals payable to the city under the lease were to be paid to the bank and applied on the notes of Airways, Airways would be deprived of necessary operating funds. The petitioner in performance of his agreement with McCulloch thereafter furnished, through the Times Co., the custodian of his funds, all the necessary operating funds required by Airways to perform its covenants under the lease. The petitioner was able to obtain reimbursement from the city of such funds furnished Airways during 1933 and 1934, but was not reimbursed from any source for the funds furnished during 1935,1936, and 1937.
*120 This is not the usual type of case where the endorser claims the right to deduct as a bad debt the amount paid by him to the creditor of the principal debtor pursuant to liability as endorser and recovery can not be had from the principal debtor. Instead, it is a case of an endorser who, realizing that the principal debtor, unassisted, is and will continue to be unable to make payment of its indebtedness, but with some financial assistance in carrying on its operations will be able to pay its indebtedness in full, but will not be-able to make repayment of such assistance, renders, under a guaranty agreement with the creditor, financial assistance to the principal debtor, with a view to avoiding having to make present payment of his liability as an endorser and reducing to a minimum the amount of loss he would sustain thereon, and claims the right to deduct the amount of the assistance thus rendered. In the former type of case it has been held that the endorser was entitled to the claimed deduction of the amount so paid. E. A. Roberts and Wife, 36 B. T. A. 549; Daniel Gimbel, 36 B. T. A. 539; Mrs. R. L. Wheelock, 28 B. T. A. 611; Cornelia Ann Cunningham, Executrix, 16 B. T. A. 244. In John P. Dillon, 9 B. T. A. 177, the taxpayer, a stockholder of a bank, was liable thereto as a guarantor on certain notes held by the bank and considered to be uncollectible. The taxpayer, without in any wise being subrogated to the bank’s right to collect on the notes but in order to be relieved of his liability as a guarantor, paid the bank $28,000 in 1921. The amount was held to be an allowable deduction as a loss from the taxpayer’s income for 1921. In Henry Adamson, 17 B. T. A. 17, the taxpayer was an endorser on notes and a guarantor of accounts of the corporation in which he was a stockholder. In 1922 he advanced the corporation $1,000 with which to pay the interest on its indebtedness, taking the corporation’s note for the amount thus advanced. In so doing the taxpayer knew the corporation was insolvent and that the note was worthless; however he considered that he was making a partial payment of his losses. Since the taxpayer was an endorser on notes and a guarantor of accounts of the corporation, it was held that the $1,000 constituted a deduction allowable to the taxpayer in 1922 as a loss sustained in that year. The purpose of the payment of the amounts involved in the Dillon and Adamson cases was either to relieve the taxpayers of or reduce the amount of their liability on the indebtedness of others for which they were liable. While in the instant case the payments made by the petitioner were to parties other than the bank to whom he was directly liable, yet the purpose and effect of such payments were the same as in the Dillon and Adamson cases and in our opinion fall into the same category as deductible losses. This, however, does not mean that the petitioner is entitled to deduct for 1936 the $5,081.94 paid during 1935.
*121 During 1983 and 1934 the city made reimbursement to the petitioner of the operating deficit of Airways which he had paid during those years. The legality of such action on the part of the city was questioned and in 1935 a special act was enacted by the state legislature, ratifying the payments but granting no authority to the city for making any such payments in the future. During 1934 new city officials were elected who were not sympathetic with any projects supported by the petitioner or the Times Co. and at the close of 1935 they had made no provision for any payment of the operating expenses of Airways, despite the fact that the petitioner apparently had been very active in his efforts to get those officials to do so. Since the city was not obligated and apparently was without authority to pay any part of the operating deficit of Airways, and since there was no basis for expecting a recovery of it from Airways, we are of the opinion that the amount paid by the petitioner through the Times Co. during 1935 represented a loss sustained by him during that year and was deductible as such for that year. The amounts paid during 1936 and 1937 represented losses sustained in those years respectively and were deductible as such in those years.
On brief the petitioner contends that, since Airways was dissolved and its affairs wound up in 1937 and he received nothing with respect 1 o his stock, he is entitled to a deduction for that year of a loss of $1,000 representing the cost of 10 shares of stock in Airways. The petitioner made no assignment of error in his petition respecting the loss on stock owned by him in Airways. Consideration will not be given to issues which are not raised by the pleadings. See Citizens National Trust & Savings Bank of Los Angeles, Executor, 34 B. T. A. 140, and cases there cited. In this connection, however, it is to be observed that the petitioner’s failure to raise the issue in his petition has not resulted in any detriment to him, since his testimony as well as that of McCulloch indicates that as early as the first part of 1933 Airways was insolvent and its stock was worthless.

Decision will Toe entered wider Rule 50.